The Service Company v. Commissioner.
Service Co. v. Commissioner
Docket No. 9359.
United States Tax Court
1947 Tax Ct. Memo LEXIS 272; 6 T.C.M. (CCH) 304; T.C.M. (RIA) 47070; March 18, 1947
*272 F. E. Hagler, Esq., and Ed M. Lowrance, Esq., for the petitioner. Donald P. Chehock, Esq., for the respondent. OPPER
Memorandum Findings of Fact and Opinion OPPER, Judge: Respondent determined deficiencies in income tax, declared value excess-profits tax, and excess-profits tax for the years 1940, 1941, and 1942, as follows: Year
Tax
Amount
1940
Income tax
$ 305.07
1941
Declared value excess-profits
tax
120.54
1941
Excess-profits tax
1,713.76
1942
Income tax
216.22
The only issue involved is whether petitioner's gain on acquisition of the assets of its wholly-owned subsidiary, the Farmers Gin Company, in complete cancellation of the subsidiary's stock, falls within the non-recognition provisions of Internal Revenue Code section 112(b)(6), as contended by respondent. If it does not, then it is stipulated that, although there was recognized gain to petitioner from the transaction itself in the amount of $2,892.34, it is entitled to compute depreciation on the properties acquired on the stepped-up basis used by petitioner for the years 1940, 1941, and 1942. Some of the facts have been stipulated. Findings *273 of Fact The stipulated facts are hereby found accordingly. Petitioner is an Arkansas corporation, organized in 1898, with its principal place of business in Forrest City, Arkansas. Its tax returns for the years in question were filed with the collector of internal revenue for the district of Arkansas. For some years prior to 1930, petitioner owned a gin located at Forrest City. Sometime in 1930 a group of farmers organized and prepared to erect a competing gin. Realizing that there was not sufficient business in the locality to support two gins, petitioner offered to sell its gin to the group in return for which petitioner received 200 shares of stock of the new Arkansas corporation that was formed, known as the Farmers Gin Company. The remaining stock of the Gin Company was subscribed for by the farmers in the community, who pledged the stock to secure loans made for its purchase. The Gin Company operated on a June 30 fiscal year basis. During the ensuing years petitioner acquired small blocks of the Gin Company's stock, until in 1940 it had become owner of all of the outstanding stock. James Fussell, petitioner's president since 1898 and president of the Gin Company *274 since 1930, acting upon the advice of a lawyer, decided to liquidate the Gin Company; and on November 9, 1940, it was dissolved. All of its assets were thereupon distributed to petitioner, its sole stockholder, in exchange for the Gin Company stock, which petitioner held and which was cancelled. As president of both petitioner and the Gin Company, the final decision of all business transactions was left to the judgment and discretion of Fussell. At the suggestion of the attorney, there was prepared a consent to dissolution, which reads as follows: WE, the undersigned, being all of the stockholders of record of the Farmers Gin Company, a corporation organized and existing under and by virtue of the laws of the State of Arkansas, with its domicile at Forrest City, Arkansas, having full voting power on a proposition to dissolve the said corporation hereby consent in writing to a dissolution of said corporation and request the said Farmers Gin Company by and through its duly authorized officers to file the within consent to dissolve with the County Clerk of St. Francis County and with the Secretary of State of the State of Arkansas, and secure said certificate of dissolution from *275 the said Secretary of State of Arkansas. WITNESS our hands this 6th day of November, 1940. /s/ A. D. McDaniel (A. D. McDaniel) /s/ A. B. Nimocks (A. B. Nimocks) s/ Mrs. Frank Rauscher, (Mrs. Frank Rauscher, Administratrix of the Estate of D. E. Horshall) /s/ G. B. Fogg (G. B. Fogg) /s/ Louis McDaniel (Louis McDaniel) The Service Company /s/ By Jas. Fussell, (President) /s/ Thos. Gatling, (Thomas Gatling, Guardian for William and John Gatling) Those whose names appear, other than petitioner, by Fussell, its president, were not stockholders. This consent was filed with the Arkansas Secretary of State on November 9, 1940, and on the same date the Secretary of State issued a certificate of dissolution. On November 13, 1940, the Gin Company filed with the collector, Treasury Department Form 966, "UNITED STATES RETURN OF INFORMATION UNDER SECTION 148(d) OF THE INTERNAL REVENUE CODE TO BE FILED BY CORPORATIONS WITHIN 30 DAYS AFTER ADOPTION OF RESOLUTION OR PLAN OF DISSOLUTION, OR COMPLETE OR PARTIAL LIQUIDATION." The signatures thereon were those of Fussell, as president of the Gin Company, and J. T. Campbell, as its secretary. The latter was also petitioner's secretary-treasurer. *276 In reply to question 4 on Form 966 - "4. Date of adoption of resolution or plan of dissolution, or complete or partial liquidation" - the answer given was - "Nov. 6, 1940." As of November 9, 1940, entries were made in the books of the Gin Company closing out the capital stock account. As of the same date, further entries were made on its books showing the cost of the properties to it. Entries were made on petitioner's books showing the fair market value of such properties. All of these entries were made by petitioner's accountant, sometime in the spring of 1941. On March 12, 1941, petitioner filed its 1940 return, claiming a long-term capital loss of $4,695.27 from the liquidation of the Gin Company, putting the cost to petitioner at $23,218.60, and the value of the property received at $18,523.42. The cotton gin machinery received on November 9, 1940, is individually itemized and shown on the return as having a total value of $10,850. The only difference between the $18,523.42 total value of property reported in petitioner's 1940 return and the $17,848.10 now stipulated as the fair market value of the net assets of the Gin Company, is the deduction of $675.32 for accrued taxes *277 of the Gin Company assumed by petitioner at the time of liquidation. On September 11, 1941, the Gin Company filed its return for the period from July 1, 1940, to November 9, 1940, showing the company dissolved on November 9, 1940, and appended to it as a part of the return is a sheet which states as follows: This corporation was dissolved on November 9, 1940 as per form 966 filed with Collector of Internal Revenue: Distribution was to the sole remaining stock-
holder, The Service Company, a Corporation.
Capital Stock Outstanding
$25,000.00
Actual Property Distributed, Net
9,994.57
Deficit in Capital
$15,005.43
The $9,994.57 mentioned in the preceding paragraph includes the cotton gin machinery at its depreciated cost basis of $2,321.15, instead of its market value of $10,850. The difference in basis added to the $9,994.57 equals the $18,523.40 reported in petitioner's 1940 return as the total value of property received in the liquidation. After the dissolution of the Gin Company, petitioner continued the operation of the gin. In the statement attached to the noitce of deficiency, respondent asserted in part: You claimed a deduction in your return *278 for a net long-term capital loss in the amount of $4,695.27, being the amount of the loss computed by you on the liquidation of the corporation, the Farmers Gin Company, Forrest City, Arkansas. It has been determined that you received property distributed in complete liquidation of said corporation within the meaning of Section 112 (b) (6) of the Internal Revenue Code and that no gain or loss is to be recognized upon the receipt by you of said property. * * * The distribution of all of the assets of Farmers Gin Company was pursuant to, and was made within the taxable year during which there was adopted, a resolution or plan by petitioner, as sole shareholder, for the liquidation of the Gin Company, under which the transfer of all the property was to be completed forthwith. Opinion Respondent determined the present deficiency on the theory that the transaction by which the petitioner received the property in question was a tax-free "complete liquidation" under section 112(b)(6), and that accordingly petitioner's basis for depreciation was that of its transferor. That is the only issue, the parties having stipulated the basis of the property if it is concluded *279 that it was not received in a tax-free transaction. Our ultimate findings of fact demonstrate that the requirements of section 112(b)(6), Internal Revenue Code, were met by the action taken in the liquidation pursuant to which petitioner received the property in question. Petitioner can not mean to dispute the existence of a "plan of liquidation" since it insists that the transaction falls within section 115(c), specifying that as one of the qualifications. The only further element of section 112(b)(6), the limitation on the period of time, we have no doubt from the evidence was also present here. Additional provisions of the Regulations (Regulations 103, section 19.112(b)(6)) dealing generally with the maintenance of records and other procedural matters, may be considered to have been waived. Burnside Veneer Company, 8 T.C. - (February 28, 1947). Accordingly, the nonrecognition provisions apply and, pursuant to the stipulation of the parties, no gain to petitioner is to be recognized, the depreciation allowed by respondent is correct, and Decision will be entered under Rule 50.